BANK OF AMERICA *vs.* FAYETTE SHAW & another.

Middlesex.   March 4. — July 3, 1886.   W. ALLEN & HOLMES, JJ., absent.

The indorser of a promissory note became insolvent and absconded from the Commonwealth before the maturity of the note, and his address was known only to his counsel, a confidential friend, and his immediate family.  Before he absconded he left his address with his counsel, who had charge of his affairs, and it was understood between them that his counsel should send him anything relating to his affairs that he deemed important, and that everything sent to his former place of business should be turned over to his counsel.  When the note became due, the indorser had no place of business in this Commonwealth ; but his sign remained over the door of the store he occupied before he absconded, and his assignee under a voluntary assignment for the benefit of his creditors was there.  The indorser had a domicil in a town of the Commonwealth other than that in which he did business, and this domicil he retained after absconding.  The holder of the note knew of the insolvency and of the assignment, but did not know that the indorser had ceased to do business at his former place of business, or that he had a residence here, and, when the note matured, sent notice of its non-payment to the indorser's former place of business.  The indorser did not receive the notice, in consequence of his counsel's telling the assignee not to send to him notices of protests.  *Held*, that due diligence was used in giving the notice.

CONTRACT, against Fayette Shaw and Brackley Shaw, co-partners under the firm name of F. Shaw and Brothers, to recover the balance due upon four promissory notes indorsed by the defendants in the firm name.  Fayette Shaw alone defended.  Trial in the Superior Court, without a jury, before *Knowlton*, J., who found for the plaintiff; and reported the case for the determination of this court.   The facts appear in the opinion.

*J. C. Lane & F. A. Wyman*, for the defendant.

*L. D. Brandeis*, for the plaintiff.

FIELD, J.   The report in this case raises the question of the sufficiency of the notice given to F. Shaw and Brothers, indorsers ·of certain promissory notes of which the makers had, on demand, refused payment.   The report finds that Fayette Shaw and Brackley Shaw constituted the firm of F. Shaw and Brothers; that no service of the writ was made upon Brackley Shaw, who was out of the Commonwealth ; that Fayette Shaw, who alone was served with process and alone defends the suit, " had left the country to avoid liability to arrest upon civil process " before the notes matured; and was, at the maturity of the notes, in

hiding in Canada, and only "Mr. Morse, one confidential friend, and Mr. Shaw's immediate family, knew of his address at that time." Before he left Boston for Canada, he "left his address with Mr. Morse, his counsel there [in Boston], who had charge of his business and his affairs, and it was understood between them that Mr. Morse should send him anything and everything relating to his affairs that he deemed important. It was also understood that everything that was addressed to him, or to F. Shaw and Brothers, at No. 268 Purchase Street, should be turned over to Mr. Morse."

"At the time the plaintiff's notes became due, the defendants had no place of business in Boston or elsewhere in this Commonwealth, but their sign remained over the door at No. 268 Purchase Street, and Wyman, their assignee, was there in the performance of his duties under the instruments of assignment." F. Shaw and Brothers had done business at No. 268 Purchase Street in Boston until they became insolvent, and assigned their property to Wyman by instruments, copies of which are annexed to the report. A notice of protest in proper form upon each of the plaintiff's notes was duly sent to 268 Purchase Street, addressed to F. Shaw and Brothers; but these notices were not sent from there to the defendant or his counsel, and the defendant had no knowledge of them, and no other notice was given him or Brackley Shaw of the dishonor of the notes. Soon after the defendant went to Canada, said Morse was informed by Wyman that notices of protest for F. Shaw and Brothers were pouring in there by the hundred, and he told Wyman, in substance, that he need not do anything with them, and said Morse never saw any of them, nor sent the defendant any communication regarding them, although he was in constant correspondence with him about his business affairs.

The following facts are also found: For several years prior to the indorsement of the notes, Fayette Shaw had his domicil in Newton in this State, and it has remained there ever since. The plaintiff knew of the defendant's insolvency, and of the assignments to Wyman, before the notes became due, but it had no knowledge that the defendant ceased to have a place of business at No. 268 Purchase Street, unless such knowledge is to be inferred from knowledge of the assignments. "The plaintiff

had no notice or knowledge of any other address of the defendant or of Brackley Shaw; and there was no evidence that the plaintiff knew, before commencing this suit, that Fayette Shaw or Brackley Shaw had or ever had a residence in this Commonwealth; nor was there any evidence that the plaintiff had made any effort to find out the residence of either Fayette Shaw or Brackley Shaw."

The first assignment was by Fayette Shaw of Newton, Massachusetts, and Brackley Shaw of Montreal, Canada, doing business under the style of F. Shaw and Brothers, to Ferdinand A. Wyman, of the property of the firm, in trust, first, if said Shaws or either of them be adjudged insolvent debtors, to convey to the assignee in insolvency such of the property as the assignee would be entitled to if the assignment had not been made; secondly, to reduce the property to money by selling it with the right in Wyman " to carry on the business of said firm for the completing of the manufacture of stock now on hand, and otherwise as far as shall be necessary and proper for the faithful and economical administration of the trusts herein and hereby declared and imposed on him, or shall be requested by the beneficiaries;" thirdly, to pay the proceeds, after deducting the expenses, equitably and ratably to the creditors; fourthly, to pay the balance to Fayette Shaw and Brackley Shaw, or to the survivor; and it was provided that Wyman " shall have power in and concerning the premises to use the name of them, or either of them, and of said copartnership, and as their attorney irrevocable to do all things in and touching the same which they or either of them might lawfully do if personally present, had these presents not been executed." The assignment is upon the condition, that, if they or either of them "shall hereafter make any arrangements with their creditors, whereby said creditors or a large majority of them consent that said property or any portion of the same shall be reconveyed to" them or either of them, Wyman shall convey the same " to the parties entitled thereto under said settlement or arrangement with creditors." The second assignment was subsequent to the first, between the same parties and of the same property, and it provides for a sale of the property, the payment of the proceeds, after deducting the expenses, ratably to creditors, and the payment of the balance remaining

to the Shaws, or the survivor of them, with a power to do all things in and touching the premises which the Shaws might do if personally present.

This case has been argued by the defendant as if the Shaws had gone out of business, and one of them had retained his residence in Newton ; but it is plain that they were still interested in the management of the trust, and that what remained of their business was still carried on at No. 268 Purchase Street, Boston, even if " they had no place of business there, or elsewhere, in this Commonwealth," and that the defendant was an absconding debtor in concealment without the Commonwealth. It is important that the law of negotiable paper be definite and certain, and, when notice has not been actually received in due time by an indorser, the question is whether due diligence in giving notice has been shown, and this, when the facts are all found, is a question of law. Notice may be given at the place of residence or the place of business, and, when the place of residence is not the place of domicil, notice at the place of residence is sufficient, although it has not been decided that notice at the place of domicil is not also good. The facts may indeed be such as to make it difficult to determine what is the place of residence or the place of business, or whether there is any place of business distinct from the place of residence, and courts must deal with such cases as best they can. The guiding principle is, that notice should be sent to the place where the party to be notified will be most likely to receive it, and reasonable diligence must be shown in ascertaining where that place is. When the indorser is a partnership, notice to one partner is notice to all ; but, as the partners may reside at different places, and sometimes far distant from the place where the business is carried on, a notice at the place of business, if there is such a place, is plainly the better, because there the partnership can best consult and act so as to protect itself from loss. In *Chouteau* v. *Webster*, 6 Met. 1, " the defendant's general domicil and place of business was in the city of Boston, where he had, at all times, an agent, who had the charge and management of his affairs," but he " was actually resident in Washington, in discharge of his public duties as a Senator ; " and the court held " that notice to the defendant, by mail, addressed to him at Washington, was good and sufficient notice

of the dishonor of these notes." It did not appear as a fact, that the notice had been actually received by the defendant. The court distinguished between domicil and residence, and based the decision upon the circumstances of the case and the general rule " that notice shall be so given, and at such place, that it will be most likely to reach the indorser promptly." See *Young* v. *Durgin*, 15 Gray, 264.

It is also plain that Morse, who had charge of the defendant's business and affairs, did not mean that the defendant should actually receive the notices of protest, although he was informed where they were sent. On the facts found by the court, if the plaintiff had known them all, it must have been considered more likely that the defendant would receive the notices if sent to 268 Purchase Street, Boston, than if sent to Newton. It does not appear that the defendant had any agent at Newton, or anything there but a naked domicil, while he was concealed in Canada ; even if his family were there, which does not distinctly appear, it is not found that they had any authority over his business or the business of the firm. In *Bliss* v. *Nichols*, 12 Allen, 443, the court say : " But the broader and more precise ground on which the sufficiency of the evidence of notice in this case rests is this, that the bill being drawn in the partnership name, notice to the partnership, while it continued, was notice to all the members ; that the holder, having had no notice of the dissolution of the partnership, had a right to treat it as subsisting ; and that the notice sent by mail, addressed to the partnership at its place of business, and where the draft was drawn, was there duly received by the agent employed to settle the partnership affairs."

The execution of the assignments in the present case did not necessarily dissolve the partnership. The notes were all expressly made payable in Boston. It may be said that Wyman was not the agent of the firm to receive notices of protest of notes, so as to bind the members of the firm personally, but the notices were not addressed to Wyman, but to the firm at its former place of business, where its affairs were being settled in accordance with the assignments, and there was, so far as appears, no other place of business of the firm or of the defendant, and his actual residence was without the Commonwealth and unknown.

We are not required to decide whether notice, addressed to the defendant or to the firm at Newton, would, under the circumstances, have been a good notice, or whether, in all cases, the holder of a note may assume that the place of business of an indorser continues the same from the time of indorsement to the maturity of the note, unless he knows or has reason to know that it has been changed. On the facts of this case, we think it was the duty of the court below to rule that the notice was good, because it was sent to what had been the place of business of the firm, where its affairs were actually in process of settlement under the trust; it was the place where the defendant expected that notices and letters would be sent to him; he had arranged that, if sent there, they should be handed to Mr. Morse, who alone had charge of his business and affairs, to be forwarded to him in Canada if Mr. Morse deemed them important; and there was no other place of business of the firm or of the defendant, and he had absconded.

Although perhaps it may be assumed that the defendant's family remained in Newton, and although the court has found that the defendant's domicil was there, which must mean that he intended to return there when he thought he would be safe from arrest, yet, under the decision in *Grafton Bank* v. *Cox*, 13 Gray, 503, we think, on the facts, that a demand at 268 Purchase Street would have been good, if the defendant had been the maker of the note, and the law governing a demand upon the maker is somewhat more strict than that governing notice to an indorser. See *Pierce* v. *Cate*, 12 Cush. 190.

*Judgment on the finding.*